IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Panama City Division

JOHN DOE 1, as parent and natural )
guardian of PLAINTIFF C, his minor child; )
JOHN DOE 2, as parent and natural )
guardian of PLAINTIFF D, his minor child; )
JANE DOE 1, as parent and natural )
guardian of PLAINTIFF B and PLAINTIFF )
M, her minor children; JANE DOE 2, as )
parent and natural guardian of PLAINTIFF )
J, her minor child; and JANE DOE 3, as )
parent and natural guardian of PLAINTIFF )
S, her minor child, )
                                       )
        Plaintiffs, )
vs. )           Case No. 5:03cv260-LAC/MCR
                                       )
JOSEPH R. FRANCIS; MRA HOLDING )
LLC, a California limited liability company; )
MANTRA FILMS, INC., an Oklahoma )
corporation (d/b/a "Girls Gone Wild"); )
AERO FALCONS, LLC, a Delaware )
limited liability company; MARK D. )
SCHMITZ; and RYAN DAVID SIMKIN, )
                                       )
        Defendants. )

---

**Memorandum in Support of Motion to Stay Proceedings Pending
Outcome of Parallel Criminal Proceedings of Defendants Joseph R. Francis,
MRA Holding LLC, Mantra Films, Inc., and Aero Falcons, LLC**

---

Thomas R. Julin & D. Patricia Wallace - Hunton & Williams LLP
Florida Bar Nos. 325376 & & 0185930
Attorneys for Joseph R. Francis, MRA Holding LLC,
  Mantra Films, Inc., and Aero Falcons, LLC
1111 Brickell Avenue, Suite 2500, Miami, Florida 33131
305.810.2516 Fax 2460 tjulin or pwallace@hunton.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION.......................................................................................................... 1

STATEMENT OF THE FACTS
UPON WHICH MOTION IS BASED............................................................................. 2

    *Girls Gone Wild* ................................................................................................... 3

    Bay County Sheriff's Office Initiates Criminal
    and Civil Forfeiture Actions Against Defendants................................................. 3

    The Defendants are Charged with Using
    Children in Sexual Performances & Coercing Prostitution .................................. 3

    Defendants Have Been Denied Access to Evidence ............................................. 4

    Parents of the Alleged Victims Sue Under the Same Criminal Statutes................ 5

    Resolution of Criminal Proceedings is Expected Within 18 Months..................... 9

ARGUMENT ............................................................................................................... 9

I.    A Stay Should be Granted Because
    The Issues in the Civil & Criminal Case Overlap................................................ 10

II.   The Defendants Will be Unfairly Burdened if
    Required to Defend Criminal & Civil Claims Simultaneously............................. 12

III.  A Stay May Help with the
    Resolution of Plaintiffs' Claims.......................................................................... 16

IV.  The Public Interest Will Be Served By A Stay ................................................... 16

V.   A Stay Will Reduce the Burden on the Court...................................................... 17

VI.  The Criminal Investigation is Well Underway .................................................... 18

CONCLUSION ........................................................................................................... 18

CERTIFICATE OF SERVICE....................................................................................... 19

## TABLE OF AUTHORITIES

Cases

Allied Realty of St. Paul, Inc. v. Exchange National Bank of Chicago,
    382 F. Supp. 464 (D. Minn. 1968) ........................................................................................ 15

Bay County Sheriff's Office v. Aero Falcons LLC,
    No. 03001480CA ...................................................................................................................... 1

Bonner v. City of Prichard,
    661 F.2d 1206 (11th Cir. 1981) ..................................................................................... 12, 13

Capdeboscq v. Francis,
    No. 03-0556 (E.D. La. Sept. 10, 2003) ............................................................................... 15

Doe v. Francis,
    No. 03-CV-242 (N.D. Fla. 2003) ........................................................................................... 5

Handelman v. Weiss,
    368 F. Supp. 258 (S.D.N.Y. 1973) ..................................................................................... 15

Hilo Metals Co. v. The Learner Co.,
    258 F. Supp. 23 (D. Haw. 1966) .......................................................................................... 15

Pervis v. State Farm Fire & Casualty Co.,
    901 F.2d 944 (11th Cir. 1990) .............................................................................................. 12

SEC v. Dresser Industrial, Inc.,
    628 F.2d 1368 (D.C. Cir. 1980) ..................................................................................... 12, 17

SEC v. First Finance Group,
    659 F.2d 660 (5th Cir. 1981) .................................................................................................. 9

State v. MRA Holding LLC,
    No. 03-1036H ........................................................................................................................ 1, 9

United States v. Kordel,
    397 U.S. 1 (1970) .................................................................................................................... 9

United States v. Lot 5, Fox Grove, Alachua County,
    23 F.3d 359 (11th Cir. 1994) ..................................................................................... 9, 12, 17

United States v. Mellon Bank N.A.,
545 F.2d 869 (3d Cir. 1976)................................................................................................ 17

United States v. White,
589 F.2d 1283 (5th Cir. 1979)........................................................................................... 12

Walsh Securities, Inc. v. Cristo Prop. Management, Ltd.,
7 F. Supp. 2d 523 (D.N.J. 1998) ............................................................................ 10, 16, 17

Wehling v. Columbia Broadcasting System,
608 F.2d 1084 (5th Cir. 1980)........................................................................................... 12

White v. Mapco Gas Products, Inc.,
116 F.R.D. 498 (E.D. Ark. 1987)....................................................................................... 10

Rules

Federal Rule of Civil Procedure 26(b)(1) ............................................................................. 13, 14

Other Authorities

Pollack,, Milton, Parallel Civil and Criminal Proceedings,
129 F.R.D. 201 (1989) ...................................................................................................... 12

iii

## INTRODUCTION

During spring break 2003, producers of the *Girls Gone Wild* video series recorded images of various events in Panama City Beach, Florida. Beginning on April 2, 2003, the Bay County Sheriff's Office arrested individuals associated with the production. At the same time, the State seized approximately 175 hours of videotapes and other evidence.

The State commenced a criminal prosecution, State v. MRA Holding LLC, No. 03-1036H, in the Circuit Court of the Fourteenth Judicial Circuit of Florida, in and for Bay County, Florida, less than two weeks later against those arrested, including all of the six defendants in this action. The charges include an allegation that Joseph R. Francis, the chief executive of MRA Holding LLC and Mantra Films, Inc., the entities responsible for the production and promotion of the *Girls Gone Wild* video series, personally violated child sex abuse laws through his contact with several minors. Simultaneously, the Bay County Sheriff's Office commenced a civil forfeiture proceeding, Bay County Sheriff's Office v. Aero Falcons LLC, No. 03001480CA, in the Circuit Court of the Fourteenth Judicial Circuit, in and for Bay County, Florida, against properties used by the defendants in connection with their alleged criminal activities.

In this action, five parents of six alleged victims of the crimes charged in State v. MRA Holding LLC make the same factual allegations as those made in that criminal action and claim that civil liability can be imposed against the defendants based on their violation of the criminal statutes underlying the criminal action.

This memorandum is filed in support of the motion of defendants Joseph R.

Francis, MRA Holding, LLC, Mantra Films, Inc., and Aero Falcons, LLC[1] to stay this action pending disposition of the criminal charges against them in <u>State v. MRA Holding LLC</u>. The motion should be granted because simultaneous prosecution of these two actions unfairly would require the defendants to choose between asserting their Fifth Amendment rights and testifying in their defense of the civil claims, would prevent the use of evidence now held as contraband in the criminal action, and would create numerous difficult discovery and evidentiary issues unnecessarily. In addition, resolution of the criminal action may simplify or resolve issues raised in this action such as the constitutionality and interpretation of criminal statutes.

As indicated in the certificate of consultation that accompanies the motion, counsel for the moving defendants has consulted with counsel for the plaintiffs and he has indicated that he does not agree that this motion should be granted at this time, but that he may be agreeable if the parties are able to reach an agreement that would ensure that images of the plaintiffs are not published by the defendants during the pendency of this action. Counsel for the parties are working toward that end now and will advise the Court regarding the results of their discussions.

## STATEMENT OF FACTS UPON WHICH MOTION IS BASED

This statement of facts is supported by the declaration of James P. Judkins, counsel of record in the criminal action for one of the defendants herein, the exhibit

---

[1]   Defendant Mark D. Schmitz has authorized counsel for the four defendants filing this motion to represent that he agrees that the motion to stay should be granted for the reasons set forth herein. Defendant Ryan David Simkin has not been served. Therefore, all served defendants agree that a stay should be granted.

attached to that declaration, and the pleadings on file with the Court.

### *Girls Gone Wild*

*Girls Gone Wild* is a video series produced and distributed by corporations or other entities owned or controlled by Joseph R. Francis. During spring break 2003, various individuals recorded certain events in Panama City Beach, Florida for possible use in the *Girls Gone Wild* video series. (Judkins Decl. ¶ 2).

### Bay County Sheriff's Office Initiates
### Criminal and Civil Forfeiture Actions Against Defendants

In April of 2003, the Bay County Sheriff's Office placed Francis and others associated with the *Girls Gone Wild* video series under arrest. (Judkins Decl. ¶ 3). In connection with these arrests, law enforcement officers seized numerous hours of video recordings and other materials. (Judkins Decl. ¶ 3).

On April 23, 2003, the State filed a multi-count criminal information against those arrested, including each of the six defendants in this action. (Judkins Decl. ¶ 4).

On April 23, 2003, Bay County Sheriff's Office filed a petition for forfeiture against Francis, Aero Falcons, LLC, Mantra Films, Inc., one 1971 Grumman Model G-1159 airplane, and one 2002 Ferrari. (Judkins Decl. ¶ 5). The same firm representing the plaintiffs in this action, Harrison, Sale, McCloy & Thompson, Chtd., is representing the Bay County Sheriff's Office in the civil forfeiture action. (Judkins Decl. ¶ 5).

### The Defendants are Charged with Using
### Children in Sexual Performances & Coercing Prostitution

On November 4, 2003, the State filed its second amended information charging 13 defendants, including all of the defendants in this action, with various violations of

3

Florida Statutes. (Judkins Decl. ¶ 6 & Ex. A).

The information alleges that on March 31, 2003, MRA, Mantra Films, Francis, Schmitz, and Aero Falcons, promoted sexual performance by "C.P." and "D.D." in violation of **section 827.071(3)**, Florida Statutes (counts 3 & 5); unlawfully procured for prostitution or causing to be prostituted "C.P." and "D.D." in violation of section 796.03, Florida Statutes (counts 12 & 14); used a child ("C.P." and "D.D.") in sexual performance in violation of **section 827.071(2)**, Florida Statutes (counts 7 & 9); and unlawfully procured for prostitution or caused to be prostituted "B.W." in violation of **section 796.03**, Florida Statutes (count 18). (Judkins Decl. ¶ 7 & Ex. A).

The information also charges Francis and others with various violations involving a person "J.C." on March 27, 2003. Specifically, the information charges Francis, Mantra Films, MRA, and Aero Falcons with conspiring to promote a sexual performance by "J.C." in violation of **section 827.071(3)**, Fla. Stats. (count 40). It charged another person with procuring for prostitution "J.C." in violation of **section 796.03**, Fla. Stats. (count 43). (Judkins Decl. ¶ 8 & Ex. A).

<u>Defendants Have Been Denied Access to Evidence</u>

Since the outset of the criminal action, the defendants have sought to obtain from the State access to seized materials that are necessary for their defense. The State, relying on section 827.071(5), Florida Statutes, and other statutes, has refused to release the materials, asserting that they contain contraband and that neither the defendants nor their counsel may legally have possession of the materials during the pendency of the criminal and forfeiture proceedings. (Judkins Decl. ¶ 9).

4

The defendants have moved to compel production of these materials but on September 3, 2003, the circuit court denied the defendants' motion for production of the allegedly contraband video materials. Other materials, containing nudity but no nudity of any alleged minors, have been ordered produced. (Judkins Decl. ¶ 10). On November 6, 2003, the circuit court ordered the Bay County Sheriff's Office to identify for the defendants contraband alleged to be contained within the videos by providing time-code citations to the defendants. (Judkins Decl. ¶ 11). The defendants still do not have possession of the seized video materials and the State remains unwilling to release the allegedly contraband materials. (Judkins Decl. ¶ 12).

Parents of the Alleged Victims<br>Sue Under the Same Criminal Statutes

On September 12, 2003, five anonymous individuals on behalf of their five daughters commenced an action, Doe v. Francis, No. 03-CV-242, against the defendants. (D.E. 1). Although they did not identify themselves in the complaint by name, the plaintiffs filed an *ex parte* motion for leave to proceed anonymously alleging that "the State of Florida is currently prosecuting the Defendants criminally and through a civil forfeiture proceeding for sexually exploiting and abusing the Plaintiffs." (D.E. 5 at 2). It therefore appears that the plaintiffs are parents of five of the alleged victims referenced in State v. MRA Holding, LLC. The Clerk assigned the action to Judge Mickle. Five days later on September 17, 2003, the plaintiffs voluntarily dismissed the action. (D.E. 7).

Three weeks later, five anonymous individuals commenced a second action, Doe v. Francis, 03-CV-260, on October 8, 2003, against the defendants. (D.E. 1). As in the

5

first action, these plaintiffs did not identify themselves by name and also moved *ex parte* for leave to proceed anonymously, alleging that "the State of Florida is currently prosecuting the Defendants criminally and through a civil forfeiture proceeding for sexually exploiting and abusing the Plaintiffs." (D.E. 5 at 2).

The second complaint was identical to the first except that it alleged two additional claims for Jane Doe 1 on behalf of her daughter M, who had not been named in the first complaint. Although the plaintiffs did not file a notice that a prior similar action had been filed pursuant to Northern District of Florida Rule 5.1(F),[2] it appears from the equivalence of the allegations in the first action with those in the second and the allegations of the motion to proceed anonymously, that the plaintiffs in the second action are the same plaintiffs who commenced the first action and that they are parents of the alleged victims of the crimes alleged against the defendants in <u>State v. MRA Holding, LLC</u>.

In discovery in the criminal action, the State has provided the defendants with the names, birth dates, and statements of witnesses, including witnesses who claim that they are victims. It appears that the parties to this case are minors who are listed as victim witnesses in the criminal action. The facts of the criminal case and this case are identical as to these parties. (Judkins Decl. ¶ 13).

The civil complaint brought on behalf of PC, PD, PB, PM, PJ, and PS plainly

---

[2]   Rule 5.1(F) states, in pertinent part: "[I]f the case was previously terminated by any means and has now been refiled without substantial change in issues or parties, the party filing the case shall file a "Notice of . . . Prior Similar Actions," containing a list and description thereof.

arises out of the same set of circumstances giving rise to the criminal and civil forfeiture proceedings against the defendants. Counts 1, 2, 4, 6, 7, 9, and 13 of the complaint appear to present the same factual and legal issues raised in counts 3, 7, 12, 5, 9, 14, and 18 of the criminal information. Count 1 alleges that Francis and Schmitz "promote[d] a sexual performance of PC," on March 31, 2003, in violation of **section 827.071(3)**, Florida Statutes. (Compl. ¶¶ 32-33). Count 2 alleges that MRA, Mantra, Aero Falcons, Francis, Schmitz, and Simkin "employ[ed] and induce[d] PC . . . to engage in a sexual performance as defined in **§ 827.071(2)**, Florida Statutes." (Compl. ¶ 37). Counts 6 and 7 make the same allegations against the defendants on behalf of PD. (Compl. ¶¶ 62 & 66). Counts 4, 9 and 13 allege that on March 31, 2003, Francis and Schmitz coerced PC, PD, and PB, respectively, into prostitution in violation of **section 796.03**, Fla. Stats. These are the same allegations involving C.P., D.D., and B.W. set forth in counts 12, 14, and 18 of the second amended information in the criminal case.

Counts 3, 8, and 12 of the complaint are common law intentional infliction of emotional distress claims based on the same conduct underlying the statutory claims raised in counts 1 and 2, counts 6 and 7, and count 13, respectively. Counts 5 and 10 are federal statutory claims based on the same conduct alleged in counts 1-4 and 6-9. Paragraph 86 of count 11 alleges the same conduct at the heart of Jane Doe 1's prostitution claim on behalf of PB in count 13. Given this similitude of underlying conduct, the allegations of count 11 of the civil complaint appear to arise out of the same circumstances giving rise to count 18 of the criminal second amended information. Counts 14 and 15 of the complaint appear to arise out of the same circumstances

7

underlying counts 1-13. Importantly, the allegations of counts 1-15 of the complaint suggest that only the defendants and an unnamed minor were present with the plaintiffs.

Count 16 of the complaint alleges that on or about March 27, 2003, PJ and a friend "were given alcoholic beverages" and "were induced, coerced and directed to engage in sexual conduct." (Compl. ¶¶ 116-17). The complaint alleges that MRA, Mantra Films, Aero Falcons, Francis, Schmitz, and Simkin "conspired to and did unlawfully promote, produce and direct the sexual performance of PJ" in violation of **section 827.071(3)**, Florida Statutes. These allegations correspond to those in counts 40 and 42 in the criminal information. Counts 17-20 allege that the same factual predicate as set forth in count 16 gives rise to causes of action for child abuse, intentional infliction of emotional distress, coercion of PJ into prostitution, and use of a child with the intent that that child engage in actual sexual explicit conduct for the purpose of producing a visual depiction of such conduct.

Count 21 of the complaint raises a claim for intentional infliction of emotional distress upon PS based on the defendants' alleged conduct of March 29, 2003, in Panama City Beach.

Counts 22-24 of the complaint, which depend on the allegations set forth in the complaint's preceding 147 paragraphs, inevitably turn on the same sets of facts and circumstances giving rise to the criminal information. Count 22 alleges a federal RICO claim based on allegations that Francis, Schmitz, and Simkin had in their custody or control on April 2, 2003, videotapes of PC, PD, and PJ; that they promoted and produced video material containing PC, PD, and PJ; and that they did not keep records regarding

8

the production of that video material.  Count 23 realleges and summarizes the allegations of the complaint as a basis for punitive damages.  Count 24 attempts to state a claim for injunctive relief.

Resolution of Criminal
Proceedings is Expected Within 18 Months

Based on Judkins' experience in the criminal courts of north Florida and his familiarity with the facts and circumstances of State v. MRA Holding, No. 03-1036H, he anticipates that the case will be finally resolved within 18 months.  (Judkins Decl. ¶ 15).

ARGUMENT

Courts generally should stay civil proceedings in which the plaintiffs claim that they are victims of crimes and seek compensation for their alleged injuries, even before a parallel pending criminal prosecution has established that the defendants committed any crimes or that the plaintiffs are in fact victims.  Such stays serve to protect the defendant's Fifth Amendment rights against compelled self-incrimination, prevent unfair advantages from being gained by any parties, and simplify and limit the issues that will be raised in the civil proceeding.  In fact, courts must stay a civil action pending the outcome of parallel criminal proceedings where "special circumstances," such as those present here, and the interests of justice require a stay.[3]

Drawing on the Supreme Court's analysis in Kordel, courts typically conduct a

---

[3] United States v. Lot 5, Fox Grove, Alachua County, 23 F.3d 359, 364 (11th Cir. 1994) (citing United States v. Kordel, 397 U.S. 1, 12 n.27 (1970) (noting that federal courts have deferred civil proceedings where interests of justice seemed to require such action)); see also SEC v. First Fin. Group, 659 F.2d 660, 668 (5th Cir. 1981).

9

balancing test, weighing the prejudice that may be caused to the defendant by simultaneous civil and criminal proceedings against the interests of the public and the court.[4] In <u>Walsh Securities, Inc.</u>, the district court stayed a private RICO and fraud action pending a criminal investigation after consideration of the following six factors: (1) the extent to which the issues in the civil and criminal cases overlap, (2) the burden upon the defendants, (3) the interests of the plaintiff in proceeding expeditiously weighed against the prejudice to the plaintiff caused by the delay, (4) the interests of the public, (5) the interests of the court, and (6) the status of the criminal investigation.[5] Weighing of these six factors in this case requires entry of a stay here.

I.

A Stay Should be Granted Because
The Issues in the Civil & Criminal Case Overlap

In <u>Walsh Securities, Inc.</u>, a private plaintiff alleged that it had suffered injury as a result of a fraud perpetrated by the defendants through numerous transactions. While the private civil action was pending, the U.S. Attorney undertook an investigation of whether these same transactions were criminally fraudulent. The district court concluded that because the government was investigating "essentially the same allegation made by Walsh in its civil complaint," the action should be stayed. <u>Id</u>. at 527.

The similarity of issues in this litigation favors staying these civil proceedings as

---

[4]   <u>See, e.g.</u>, <u>Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.</u>, 7 F. Supp. 2d 523, 526 (D.N.J. 1998); <u>see also</u> <u>White v. Mapco Gas Prods., Inc.</u> 116 F.R.D. 498, 501 (E.D. Ark. 1987) (weighing competing interests to determine whether to stay discovery).

[5]   <u>See</u> 7 F. Supp. 2d at 526-27.

10

well. The direct overlap of the criminal prosecution and this civil action is apparent from the pleadings. It can be seen even more directly in the following chart that shows how the criminal charges are directly parallel to the civil claims based on violations of the Florida Statutes:

| Criminal Information | | | |
|---|---|---|---|
| Count | Statute | Victim | Date |
| 3 | 827.071(3) | CP | 3-31-03 |
| 5 | 827.071(3) | DD | 3-31-03 |
| 7 | 827.071(2) | CP | 3-31-03 |
| 9 | 827.071(2) | DD | 3-31-03 |
| 12 | 796.03 | CP | 3-31-03 |
| 14 | 796.03 | DD | 3-31-03 |
| 16 | 847.011 | CP | 4-2-03 |
| 17 | 847.011 | DD | 4-2-03 |
| 18 | 796.03 | BW | 3-31-03 |
| 20 | 847.011 | BW | 3-31-03 |
| 40 | 827.071(3) | JC | 3-27-03 |
|  |  |  |  |
| 41 | 847.011 | JC | 4-1-03 |
| 42 | 562.11 | JC | 3-27-03 |
| 65 | 827.04(1)(2) | SB | 3-26/27-03 |

| Civil Complaint | | | |
|---|---|---|---|
| Count | Statute | Daughter | Date |
| 1 | 827.071(3) | PC | 3-31-03 |
| 6 | 827.071(3) | DD | 3-31-03 |
| 2 | 827.071(2) | PC | 3-31-03 |
| 7 | 827.071(2) | DD | 3-31-03 |
| 4 | 796.03 | PC | 3-31-03 |
| 9 | 796.03 | DD | 3-31-03 |
|  |  |  |  |
| 13 | 796.03 | PB | 3-31-03 |
| 16 | 827.071(3) | PJ | 3-27-03 |
| 17 | 827.071(2) | PJ |  |
| 19 | 796.03 | PJ | 3-27-03 |
|  |  |  |  |
| 21 |  | PS | 3-29-03 |

As discussed above, the remaining allegations in the complaint arise out of the same circumstances that gave rise to the criminal information. Essentially, the State of Florida is investigating the same allegations that the plaintiffs have raised in this litigation. This similarity militates in favor of this Court's staying these civil proceedings pending the outcome of the parallel criminal proceedings.

II.

## The Defendants Will be Unfairly Burdened if
## Required to Defend Criminal & Civil Claims Simultaneously

Often the most important factor in determining whether to grant a stay is the defendants' Fifth Amendment right and concomitant considerations flowing from that right. Nowhere is there a stronger "case for deferring civil proceedings until after completion of criminal proceedings [than] where a party under indictment for a serious offense is required to defend a civil action involving the same matter."[6]  The Eleventh Circuit has stated that where a party's invocation of his Fifth Amendment privilege compels an adverse judgment, the court may not deny a stay.[7]  The issues at stake are of such constitutional proportions that courts have indicated that forcing a defendant to choose between waiving his privilege against self-incrimination or losing a civil case on summary judgment would violate the defendant's Fifth Amendment rights.[8]

In Wehling v. Columbia Broadcasting System, 608 F.2d 1084 (5th Cir. 1980),[9] Carl Wehling brought a libel action alleging that he had been defamed by a CBS Evening

---

[6]  SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375-76 (D.C. Cir. 1980); see also Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 203 (1989) ("The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned").

[7]  See Lot 5, 23 F.3d at 364.

[8]  See Pervis v. State Farm Fire & Cas. Co., 901 F.2d 944, 946-47 (11th Cir. 1990) (citing United States v. White, 589 F.2d 1283, 1287 (5th Cir. 1979).

[9]  In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

News Broadcast that stated that he had defrauded both his students and the federal government through abuse of a federal student loan program. Prior to the broadcast, Wehling had invoked his Fifth Amendment privilege when he appeared before a grand jury investigating federally insured student loan programs. Wehling's counsel advised that he had reason to believe that Wehling was a target of an ongoing grand jury investigation and that CBS was cooperating with the government in its investigation. When CBS sought discovery in the civil matter, Wehling invoked his Fifth Amendment privilege against self-incrimination. The district court ordered him to respond to the discovery or have his case dismissed. Wehling moved for a protective order that would have effectively stayed discovery for as much as three years, when the statute of limitations on the potential criminal prosecution would expire. See id. at 1088-89. The court denied Wehling's motion. When Wehling persisted in asserting his Fifth Amendment privilege, the court dismissed his case.

On appeal, the former Fifth Circuit recognized the conflict between permissible discovery under the Federal Rule of Civil Procedure 26(b)(1), which entitled any party to all information relevant to the subject matter of the action before the court and Wehling's Fifth Amendment privilege in the civil proceedings. See id. at 1086. CBS asserted that the district court properly dismissed the action because it would be unfair to allow Wehling to proceed while depriving CBS of the information required for its defense. CBS also argued that postponing discovery pending termination of the grand jury proceedings or expiration of the limitations period would prejudice its defense. See id. at 1087. The former Fifth Circuit held that the district court's dismissal of Wehling's libel

13

action solely because he exercised his Fifth Amendment privilege was unconstitutional. The court stated: "When the district court ordered Wehling to answer CBS' questions or suffer dismissal, it forced the plaintiff to choose between his silence and his lawsuit. The Supreme Court has disapproved of procedures which require a party to surrender one constitutional right in order to assert another." Id. (citing Simmons v. United States, 390 U.S. 377, 394 (1968)).   The former Fifth Circuit concluded that the inconvenience accompanying a stay was "preferable . . . to requiring plaintiff to choose between his silence and his lawsuit." Id. at 1089.   The appellate court remanded the case with instructions for the district court to stay discovery until the applicable statute of limitations on the criminal proceedings had run.

As in Wehling, the defendants in this action would be forced to choose between asserting their Fifth Amendment privileges and testifying in their own defense.   The defendants here are not merely being investigated as in Wheling; they are already under a criminal information.   Not only are the plaintiffs here apparently cooperating with the government's investigation of the defendants, but they are also represented by the same firm that represents the Bay County Sheriff's Office, the agency that arrested Francis and others defendants, in its prosecution of the civil forfeiture claim.   And, unlike Wehling who himself chose to initiate the action against CBS, the defendants here have been forced into these proceedings by the plaintiffs.   If this civil action proceeds, the defendants face the danger that any information the plaintiffs and their attorneys obtain here will fuel the criminal investigation.   This danger led one U.S. District Court to sharply curtail discovery in a civil action to prevent exposing the defendant to compelled

14

self-incrimination in a simultaneous criminal action that arose out of different facts.[10] That solution would not work here because this litigation arises out of the same circumstances at issue in the criminal proceeding.

Fifth Amendment considerations aside, proceeding with both actions simultaneously will create other practical problems that could prejudice defendants, plaintiffs, or both. For example, none of the parties may have access to or the ability to offer into evidence the extensive seized video materials, much of which the State now claims contains contraband. Resolution of the criminal case may resolve that problem by establishing that none of the videotapes are illegal to possess. In addition, the plaintiffs' counsel's representation of law enforcement authorities conducting the prosecution of the defendants presents ethical issues that are difficult to resolve at this point.[11]

---

[10] In Capdeboscq v. Francis, No. 03-0556 (E.D. La. Sept. 10, 2003) (order granting in part and denying in part motion for stay) (a copy of which is attached), the defendants moved to stay the civil proceedings in which the plaintiffs raised invasion of privacy and other claims arising out of events that took place at Mardi Gras in 2002. The Court granted a limited stay of discovery "precluding any inquiry in this matter into the alleged conduct that occurred in Florida." Id. at 6. The court denied a complete stay only because the Louisiana case and the Florida criminal proceeding arose from different facts. The order accommodated both the constitutional interests of the defendants and the interests of the plaintiffs in proceeding. See id. at 5.

[11] Florida Bar Rule 4-1.11(b) states, in relevant part: "A lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person." See also Handelman v. Weiss, 368 F. Supp. 258 (S.D.N.Y. 1973) (attorney who had represented government interests disqualified from related civil action); Hilo Metals Co. v. The Learner Co., 258 F. Supp. 23 (D. Haw. 1966); Allied Realty of St. Paul, Inc. v. Exchange Nat'l Bank of Chicago, 382 F. Supp. 464 (D. Minn. 1968) (former government lawyer in criminal action was disqualified to act as attorney for plaintiff in subsequent civil action). Here,

15

III.

A Stay May Help with the
Resolution of Plaintiffs' Claims

In Walsh Securities, Inc., the district court reasoned that the plaintiff would not be harmed by a delay in the civil proceedings even if it continued to suffer financial losses during the stay because Walsh could collect interest at the end of the day if it prevailed.[12] Walsh alleged that it was losing money because property owners had become delinquent in payments under the mortgage loans. The court recognized that "Walsh's financial losses are undoubtedly continuing," but nonetheless entered the stay.

Here, the plaintiffs are not suffering ongoing financial losses. Rather, their claims arise out of incidents that occurred in spring, 2003. Moreover, a stay may help the plaintiffs because the government's prosecution may narrow the issues and reduce litigation expenditures. Resolution of the criminal case may lead to a speedy settlement, thus eliminating the need for sizeable and duplicative expenditure of resources and efforts by the plaintiffs, the defendants, and the Court.

IV.

The Public Interest Will Be Served By A Stay

Similarly, the public interest will be served by a stay because the State may continue to investigate and prosecute the criminal allegations without being impeded by

---

the defendants have asked plaintiffs' counsel informally for information relevant to a determination of whether the dual representation is permissible at this time.

[12]   See 7 F. Supp. 2d at 528.

16

ongoing activity in this Court. Staying this litigation, brought by private litigants for the purpose of receiving financial compensation, as in <u>Walsh Securities, Inc.</u>, will not have the deleterious effect on the public interest that is protected by such proceedings as civil forfeiture or administrative actions. In forfeiture proceedings, the government's interest in protecting the public against ongoing criminal enterprises militates in favor of allowing the government to prosecute its claims against property that was used to commit of facilitate the commissions of crimes. <u>See</u> <u>Lot 5</u>, 23 F.3d at 360. Similarly, courts often conclude that the SEC should be allowed to pursue administrative actions during the pendency of criminal investigations to protect financial markets. <u>See, e.g.</u>, <u>Dresser</u>, 628 F.2d at 1377. No such public interests are at issue here, where the plaintiffs are private parties seeking to vindicate their own financial interests.

V.

<u>A Stay Will Reduce the Burden on the Court</u>

Staying the civil proceedings during the pendency of the parallel criminal proceedings will conserve judicial resources, which will not have to be expended resolving numerous discovery issues as the defendants assert their Fifth Amendment privilege in response to discovery. <u>See, e.g.</u>, <u>Walsh</u>, 7 F. Supp. 2d at 528. Staying proceedings conserves judicial resources and is appropriate where the "resolution of the criminal case would moot, clarify, or otherwise affect various contentions in the civil case." <u>United States v. Mellon Bank N.A.</u>, 545 F.2d 869, 873 (3d Cir. 1976).

In this case, it is quite possible that the criminal case will moot some of the issues in this litigation. At the very least, the criminal proceedings should clarify the issues,

17

streamline this Court's proceedings, and obviate the need for resolution of discovery issues arising from assertion of Fifth Amendment privileges in response to interrogatories, requests for production, and deposition questions.

VI.

### The Criminal Investigation is Well Underway

The criminal investigation of the same factual claims at issue in this litigation has been pending since April, 2003. The information has been refined through several amendments, some counts have been dismissed, and trial is expected within 18 months.

### CONCLUSION

The Court should grant the requested stay pending the resolution of the criminal prosecution of the defendants.

Respectfully submitted,

Hunton & Williams LLP
Attorneys for Joseph R. Francis, MRA Holding, LLC;
  Mantra Films, Inc., and Aero Falcons, LLC

By _Patricia Wallace_____
      Thomas R. Julin & D. Patricia Wallace
      Florida Bar Nos. 325376 & 0185930
      1111 Brickell Avenue, Suite 2500
      Miami, Florida 33131-1802
      305.810.2500 Fax 2460

18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this motion and incorporated memorandum was served by U.S. mail on December 1, 2003, to:

> D. Ross McCloy, Jr.
> Harrison, Sale, McCloy & Thompson, Chtd.
> Post Office Drawer No. 1579
> Panama City, Florida 32402
> Attorneys for Plaintiffs

> Thomas G. Dent & Scott A. Carlson
> Seyfarth Shaw, LLP
> 55 East Monroe Street, Suite 4200
> Chicago, Illinois 60603
> Attorneys for Plaintiffs

> Michael D. Whalen
> Bedell, Dittmar, DeVault, Pillans & Coxe, PA
> 101 East Adams Street
> Jacksonville, Florida 32202

_Patricia Wallace_
D. Patricia Wallace

19